

# NUMBER 13-25-00493-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JOHN HENRY CASTILLO,                                          Appellant,

v.

THE STATE OF TEXAS,                                          Appellee.

## ON APPEAL FROM THE 290TH DISTRICT COURT
## OF BEXAR COUNTY, TEXAS

# OPINION

**Before Chief Justice Tijerina and Justices Silva and Cron**
**Opinion by Justice Silva**

A jury found appellant John Henry Castillo guilty of assault on a public servant, a third-degree felony. *See* TEX. PENAL CODE § 22.01(a)(1), (b)(1). After finding the State's enhancement allegations true, the court sentenced Castillo to thirty years' imprisonment. *See id.* § 12.42(d). By a single issue, which we construe as having two sub-issues, Castillo complains his trial counsel was ineffective during the guilt-innocence phase of

trial by failing to call Castillo and another witness to testify on a theory of self-defense and failing to request a self-defense instruction. We affirm.

## I.     BACKGROUND[1]

On May 9, 2024, Castillo was indicted for assault on a public servant. *See id.* § 22.01(a)(1), (b)(1). The State subsequently filed notice of its intent to enhance the applicable punishment range of the indicted offense to that of a habitual felony offender because Castillo allegedly had two previous final felony convictions. *See id.* § 12.42(d) (providing for the enhanced punishment range of 25 to 99 years imprisonment, or a life sentence, for habitual felony offenders). A jury was selected on June 17, 2025, and on the same day, Castillo elected for the trial court to assess punishment in the event the jury found him guilty. The guilt-innocence phase of trial commenced on June 20, 2025, and the following evidence was adduced.

On March 20, 2024, Castillo was placed in an emergency restraint chair due to his disruptive behavior while confined in the Bexar County Jail. That same day, officers with Bexar County Sheriff's Office (BCSO) were tasked with removing Castillo from the emergency restraint chair every two hours "so he can exercise his extremities and . . . use the restroom or anything like that." BCSO Corporal Michael Robles with the Special Emergency Response Team (SERT) testified that he was present during the March 20 incident. Robles was a member of the SERT team that had to "extract [Castillo] from the cell" because "he was refusing to leave the unit." He testified that Castillo was

---

[1] This case is before the Court on transfer from the Fourth Court of Appeals pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE §§ 22.220(a) (delineating the jurisdiction of appellate courts), 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer). We are bound by the precedent of the transferring court to the extent that it differs from our own. *See* TEX. R. APP. P. 41.3.

2

"[a]ggressive, . . . threatening us the whole time, [and] not complying with our verbal commands." Robles further testified that Castillo was placed in the emergency restraint chair earlier that day "due to his disruptive behavior, his failure to comply with verbal commands" and his "spitting towards us." Robles confirmed that a "spit mask" was utilized during the encounter. The following exchange occurred:

| [The State]: | Just briefly. How long was your interaction in total with [Castillo]? |
|---|---|
| [Robles]: | Throughout that whole incident—I don't know exactly how many hours. It was throughout the day. When we do place him in the [emergency restraint chair], we have to go in every two hours and take them out and give them the opportunity to stretch their extremities, use the restroom, walk around. |
| | Due to his disruptive behavior and him not following with the verbal commands or seeing if he will comply, he was placed back in the chair. |

Video footage from Robles's body camera was admitted into evidence and published to the jury. This video footage depicted Castillo's encounter with the officers on the date in question. Castillo is seen in the emergency restraint chair threatening and yelling profanities at the officers as well as making biting motions towards them. Robles testified that Castillo bit him during this encounter through the mesh transport hood that was placed over Castillo's head and that he felt "a stinging and burning sensation" as a result of the bite. On cross-examination, Robles confirmed that officers would have conducted around "3 or 4" checks during the eight-hour period that Castillo was confined to the emergency restraint chair.

BCSO Corporal Dirick Cisneros, also with the SERT team, testified that Castillo

3

was "very upset[ and] agitated" that day. Cisneros testified that, after officers secured Castillo in the emergency restraint chair, Castillo "was moving his head, saying that he was going to . . . bite us or something like that, and I believe he did bite [Robles] in the arm." Following this incident, Cisneros took a photograph of Robles's arm, which was admitted into evidence. On cross-examination, Cisneros testified that there was an officer on either side of Castillo. He also confirmed that Castillo was restrained with "shoulder straps, [a] lap belt, forearm . . . straps[,] and leg straps" as well as "a transport hood." Cisneros explained that a transport hood is a mesh hood which is put "over an individual's head who is spitting" to prevent the person from spitting bodily fluids on another person. He further confirmed that Robles was bitten through the mesh transport hood.

On June 20, 2025, the jury found Castillo guilty of the indicted offense. *See id.* § 22.01(a)(1), (b)(1). The punishment phase of Castillo's trial commenced on August 4, 2025. Castillo testified during this phase and the following colloquy occurred:

| [Castillo's counsel]: | And you have raised with me a question of— some information that you want to now present that you didn't present during the trial. Remember, we talked about, during the trial, testifying. And you— |
| --- | --- |
| [Castillo]: | Correct. |
| [Castillo's counsel]: | —you thought not to testify at the trial[,] right? |
| [Castillo]: | You're correct. |
| . . . . | |
| [Castillo's counsel]: | Okay. You're just kind of mad at me for not bringing up the fact that you were— |
| [Castillo]: | Yeah, I mean, the—yeah. I mean— |

4

| | |
|---|---|
| [Castillo's counsel]: | Well— |
| [Castillo]: | —there's a lot more to it— |
| THE COURT: | 'The fact that you were' what? |
| [Castillo's counsel]: | For not bringing up—and then he started answering— |
| | (Simultaneously speaking) |
| THE COURT: | Oh, okay. |
| [Castillo's counsel]: | —some of the things he's answered for you today— |
| THE COURT: | Okay. |
| [Castillo's counsel]: | —Judge, about the—the—that he wanted to talk about— |
| THE COURT: | Wanted to at trial? |
| [Castillo's counsel]: | —mistreat—yeah—mistreatment. |

Subsequently, the State introduced evidence of Castillo's two previous final felony convictions. Castillo pleaded true to both of the State's enhancement allegations. The trial court found both enhancement allegations true and sentenced Castillo to thirty years' imprisonment in the Texas Department of Criminal Justice Institutional Division. *See id.* § 12.42(d). Castillo did not file a motion for new trial. This appeal ensued.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

### A. Ineffective Assistance of Counsel

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. "An appellate court looks to the totality of the representation and the particular

5

circumstances of each case in evaluating the effectiveness of counsel." *Lynch v. State*, 318 S.W.3d 902, 904 (Tex. App.—San Antonio 2010, pet. ref'd) (citing *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)). "[A] person claiming ineffective assistance of counsel must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense." *Ex parte Covarrubias*, 665 S.W.3d 605, 609 (Tex. Crim. App. 2023) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

To satisfy the first prong, deficiency is established by "showing that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, considering the facts of the case viewed from counsel's perspective at the time of the representation." *Ex parte Garza*, 620 S.W.3d 801, 808–09 (Tex. Crim. App. 2021) (first citing *Strickland*, 466 U.S. at 687–88; then citing *Wiggins v. Smith*, 539 U.S. 510, 523 (2003)). The Texas Court of Criminal Appeals has routinely held that "claims of ineffective assistance of counsel are generally not successful on direct appeal and are more appropriately urged in a hearing on an application for a writ of habeas corpus." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). "On direct appeal, the record is usually inadequately developed and 'cannot adequately reflect the failings of trial counsel' for an appellate court 'to fairly evaluate the merits of such a serious allegation.'" *Id.* (quoting *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002)). In the absence of an explanation in the record for why counsel's conduct allegedly fell below this objective standard, we will "assume a strategic motivation if any can possibly be imagined" and not conclude that the challenged conduct constituted deficient performance unless the conduct was "so outrageous that no competent attorney would

6

have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) (quoting 3 W. LaFave et al., *Criminal Procedure* § 11.10(c) (2d ed. 1999)).

The appellant bears the burden to prove ineffective assistance of counsel by a preponderance of the evidence. *Lynch*, 318 S.W.3d at 904; *Perez v. State*, 689 S.W.3d 369, 381 (Tex. App.—Corpus Christi–Edinburg 2024, no pet.). We employ a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance and that it was motivated by a sound trial strategy. *Strickland*, 466 U.S. at 689; *Hart v. State*, 667 S.W.3d 774, 781 (Tex. Crim. App. 2023). The presumption of a sound trial strategy generally cannot be overcome absent evidence in the record of the attorney's reasons for his conduct. *See Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007) ("The lack of a clear record usually will prevent the appellant from meeting the first part of the *Strickland* test."); *Davis v. State*, 533 S.W.3d 498, 510–11 (Tex. App.—Corpus Christi–Edinburg 2017, pet. ref'd) ("When direct evidence is unavailable, we will assume counsel had a strategy 'if any reasonably sound strategic motivation can be imagined.'" (quoting *Lopez*, 343 S.W.3d at 143)). If there is any basis for concluding that counsel's conduct was strategic, then further inquiry is improper. *Lopez*, 343 S.W.3d at 143. We consider "the reasonableness of counsel's actions at the time, rather than viewing such actions through the benefit of hindsight." *Hart*, 667 S.W.3d at 782.

To establish prejudice under the second prong, the appellant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to

7

consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) (first citing *Garcia*, 57 S.W.3d at 440; then citing *Strickland*, 466 U.S. at 697). Accordingly, failure to make a showing under either *Strickland* prong defeats a claim for ineffective assistance. *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010) (citing *Thompson*, 9 S.W.3d at 813).

**B.    Self-Defense**

The gravamen of Castillo's complaint on appeal concerns a theory of self-defense. The Texas Penal Code states that, subject to certain exceptions, a person is justified in using force against another "when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of *unlawful* force." TEX. PENAL CODE § 9.31(a) (emphasis added). A "[r]easonable belief" in this context is defined as one "that would be held by an ordinary and prudent man in the same circumstances as the actor." *Id.* § 1.07(a)(42). The defendant bears the burden to produce evidence in support of his self-defense claim. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018). However, "evidence of self-defense need not come from the defendant. It can be raised by other [witnesses'] testimony about the defendant's acts and words at the time of the offense." *Lozano v. State*, 636 S.W.3d 25, 33 (Tex. Crim. App. 2021) (citing *Smith v. State*, 676 S.W.2d 584, 585 (Tex. Crim. App. 1984)).

Moreover, "the Texas Penal Code provides guidelines for when a correctional officer's use of force is considered 'lawful.'" *Hall v. State*, 158 S.W.3d 470, 475 (Tex. Crim. App. 2005). "Knowing the innate danger in maintaining a correctional facility, the legislature grants correctional officers the right to use reasonable force against an inmate

8

to maintain their own safety, the safety of others, or the security of the prison as a whole."

*Id.* Section 9.53 provides the following:

> An officer or employee of a correctional facility is justified in using force against a person in custody when and to the degree the officer or employee reasonably believes the force is necessary to maintain the security of the correctional facility, the safety or security of other persons in custody or employed by the correctional facility, or his own safety or security.

TEX. PENAL CODE § 9.53. "Thus, if a correctional officer's use of force falls within the above definition, he is lawfully discharging his official duties . . . ." *Hall*, 158 S.W.3d at 475. In this regard, a defendant is not entitled to use self-defense in response to *lawful* force. *See* TEX. PENAL CODE § 9.31(a) (emphasis added); *see also Vaughns v. State*, No. 04-10-00364-CR, 2011 WL 915700, at *2 (Tex. App.—San Antonio Mar. 16, 2011, pet. ref'd) (mem. op., not designated for publication) ("There is no evidence the officers used unlawful force, and [the defendant] was not entitled to use self-defense in response to lawful force." (citing TEX. PENAL CODE § 9.31)).

"[T]he issue of self-defense is an issue of fact to be determined by the jury." *Braughton*, 569 S.W.3d at 609; *Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991). Section 2.03 provides that "[t]he issue of the existence of a defense is not submitted to the jury unless evidence is admitted supporting the defense." TEX. PENAL CODE § 2.03(c). "Self-defense is a confession-and-avoidance defense requiring the defendant to admit to his otherwise illegal conduct." *Jordan v. State*, 593 S.W.3d 340, 343 (Tex. Crim. App. 2020) (citing *Juarez v. State*, 308 S.W.3d 398, 404 (Tex. Crim. App. 2010)). "A defendant is entitled to an instruction on self-defense if the issue is raised by the evidence, whether that evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the defense." *Elizondo*

9

*v. State*, 487 S.W.3d 185, 196 (Tex. Crim. App. 2016) (quoting *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001)). "[U]nder [Section] 2.03(c), a defense is supported (or raised) by the evidence if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true." *Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007); *see Braughton*, 569 S.W.3d at 608 ("The defendant's burden of production requires him to adduce some evidence that would support a rational finding in his favor on the defensive issue."); *Krajcovic v. State*, 393 S.W.3d 282, 286 (Tex. Crim. App. 2013) ("[E]ven a minimum quantity of evidence is sufficient to raise a defense as long as the evidence would support a rational jury finding as to the defense.").

### III. ANALYSIS

For the reasons detailed below, and in the face of this silent record, we conclude that Castillo has failed to prove his trial counsel was deficient during the guilt-innocence phase of trial in failing to present the testimony of BCSO Sergeant Rosalinda Yanez or Castillo himself and failing to request a self-defense instruction in the jury charge. *See Garcia*, 57 S.W.3d at 440.

### A. Witness Testimony

We first address Castillo's complaint that his trial counsel was ineffective for failing to call Yanez or Castillo as witnesses to substantiate his purported self-defense claim. To prevail on his claim that his trial counsel was ineffective for failing to call particular witnesses at trial, Castillo must show that the witnesses were "available to testify and that [their] testimony would have been of some benefit to the defense." *Ex parte Ramirez*, 280 S.W.3d 848, 853 (Tex. Crim. App. 2007) (citation modified) (quoting *Ex parte White*, 160

S.W.3d 46, 52 (Tex. Crim. App. 2004)).

The day after the jury was selected, the trial court held a bench conference outside of the jury's presence on June 18, 2025, the day opening arguments and presentation of evidence in Castillo's trial was initially set to commence. The trial court requested testimony be put on the record surrounding Castillo's behavior that morning. Castillo directs us to Yanez's testimony at the hearing; however, that testimony does not establish that Yanez was available to testify two days later on June 20, 2025, which is when the parties presented evidence to the jury. Castillo does not direct us to any record evidence, if any exists, establishing that Yanez was available to testify at his trial, and we have found none. Thus, we conclude Castillo has failed to establish his counsel was deficient for failing to call Yanez as a witness during the guilt-innocence phase of his trial.[2] *See Ex parte Ramirez*, 280 S.W.3d at 853.

Similarly, there is no evidence that Castillo was willing to testify in his own defense. A defendant's decision to testify is a personal right. *Cantu v. State*, 678 S.W.3d 331, 346 (Tex. App.—San Antonio 2023, no pet.) (citing *Johnson v. State*, 169 S.W.3d 223, 232 (Tex. Crim. App. 2005)). "The defendant possesses the ultimate authority to decide whether to invoke the right." *Id.* (citing *Johnson*, 169 S.W.3d at 236). The record before us provides no evidence where Castillo expressed his desire to testify during the guilt-innocence phase of trial. Notably, when Castillo's counsel asked during his punishment hearing, "[Y]ou thought not to testify at the trial[,] right?" Castillo responded, "You're

---

[2] Because there was no evidence concerning the availability of Yanez's testimony at trial, we need not address whether her testimony would have benefitted Castillo. *See Ex parte Ramirez*, 280 S.W.3d 848, 853 (Tex. Crim. App. 2007); *see also* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

11

correct." Thus, based on the record before us, Castillo chose not to invoke his right to testify at trial. *See id.* The fact that Castillo "is disappointed in the outcome of the trial, does not result in ineffective assistance of counsel at trial." *See id.* We therefore conclude Castillo has failed to establish that his trial counsel was deficient by failing to call him as a witness during the guilt-innocence phase of his trial.[3] *See Ex parte Ramirez*, 280 S.W.3d at 853.

## B.    Self-Defense Jury Instruction

We next address Castillo's argument that a self-defense claim was "supportable under the instant record" and that his trial counsel was ineffective for failing to request a self-defense instruction in the jury charge. To prove deficient performance based on his trial counsel's failure to request such instruction, Castillo must show that he was entitled to argue the theory to the factfinder. *See Hart*, 667 S.W.3d at 782. In determining whether Castillo was entitled to argue a self-defense theory to the jury, we must decide if there was sufficient evidence to raise the defense during the guilt-innocence phase of trial. *See Jordan*, 593 S.W.3d at 343.

Castillo contends the self-defense element of "confession and avoidance is no problem" based on Yanez's testimony. Castillo further asserts that "every statutory element of self-defense was satisfied by the testimonies of [Castillo] and/or his jailers." In support of his contentions, he specifically directs us in part to Yanez's testimony, which took place two days before the parties provided opening statements and outside of the

---

[3] In his brief, Castillo contends that "any argument that appellant 'chose' not to testify at guilt-innocence is belied by [his] counsel's own admission at sentencing that [Castillo] was still 'mad at him' for not substantiating his jailers' mistreatment at guilt-innocence." However, we have found nothing in the record before us indicating that Castillo wanted to testify during the guilt-innocence phase of his trial.

12

jury's presence, and the testimony of Castillo himself during the punishment phase of trial. Neither of their testimonies were presented to the jury during the guilt-innocence phase of trial. Because "the issue of self-defense is an issue of fact to be determined by the jury," *Braughton*, 569 S.W.3d at 609, it follows that we only consider the evidence that was actually presented to the jury during the guilt-innocence phase when analyzing whether self-defense was raised by the evidence. *See* TEX. PENAL CODE § 2.03(c); *Shaw*, 243 S.W.3d at 657–58. Moreover, Castillo appears to concede that without their testimonies his "self-defense claim . . . was not supported sufficiently by evidence the jury heard." However, elsewhere in his brief, Castillo references Robles's body camera video footage and asserts that his "counsel should have requested a self-defense instruction based on [the video footage] alone."

In the present case, we cannot say there was evidence that the officers used unlawful force, a requirement to trigger application of Section 9.31(a). *See* TEX. PENAL CODE § 9.31(a). The evidence at trial demonstrated that Castillo, while confined in the Bexar County Jail, was the person who necessitated the officers' actions by acting aggressively, verbalizing threats, failing to listen, and not complying with officers' commands. As Robles explained, "Due to his disruptive behavior and him not following with the verbal commands or seeing if he will comply, he was placed back in the chair." Additional testimony from Cisneros established that Castillo was upset, agitated, and he "was moving his head, saying that he was going to . . . bite us." We conclude that no evidence exists showing that the officers' actions in response to Castillo's behavior—placing him in an emergency restraint chair with a mesh hood over his head—were unlawful or not justified under Section 9.53. *See* TEX. PENAL CODE § 9.53 (providing that

13

an officer of a correctional facility is justified in using force against person in custody when the officer reasonably believes force is necessary to maintain security of facility); *see also Vaughns*, 2011 WL 915700, at *2. Therefore, Castillo was not entitled to use self-defense in response to the officers' use of lawful force in maintaining security at the jail. *Compare id.* § 9.31(a), *with id.* § 9.53.

Consequently, we find that self-defense was not raised by the evidence in this case. *See Elizondo*, 487 S.W.3d at 196. As a result, the trial court would not have abused its discretion in overruling a self-defense instruction request had Castillo's counsel asserted one. *See Hernandez v. State*, 107 S.W.3d 41, 49 (Tex. App.—San Antonio 2003, pet. ref'd) ("When the evidence fails to raise an issue, the trial court commits no error in refusing a requested instruction.") (citing *Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993)). Accordingly, we conclude Castillo has failed to show that his trial counsel was deficient for failing to request a self-defense instruction. *See Hart*, 667 S.W.3d at 782; *see also Young v. State*, 991 S.W.2d 835, 839 (Tex. Crim. App. 1999) (holding that appellant's counsel was not deficient under the first prong of the *Strickland* test for failing to request an instruction that appellant was not entitled to receive); *Cummings v. State*, 401 S.W.3d 127, 132 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) ("Appellant's trial counsel's failure to request an instruction to which appellant was not entitled is not ineffective assistance."). We overrule Castillo's sole issue on appeal.[4]

---

[4] Because we have concluded that Castillo has failed to establish that his trial counsel was deficient, we decline to address Castillo's complaints that he suffered prejudice as a result of the purported errors he complains of on appeal. *See Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong."); *see also* TEX. R. APP. P. 47.1.

## IV.    CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
9th day of July, 2026.

15